UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  Case No. 2:24-cr-20457

v.                                  Honorable Susan K. DeClercq
                                  United States District Judge

TERRANCE FLETCHER,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO
SUPPRESS EVIDENCE AND REQUESTS FOR A *FRANKS* HEARING
(ECF Nos. 53; 54)**

Suspecting that Terrance Fletcher was involved in a "lien washing" scheme, FBI agents requested and obtained three search warrants to further their investigation into the scheme. First, agents searched Fletcher's iCloud account, from which they recovered evidence of gun possession, lien washing, and identity theft. Relying on the fruits of that search as well as information gathered from other sources, the agents then requested and obtained warrants to search two homes associated with Fletcher. While executing these two residential search warrants, agents found two pistols and a rifle. Agents also found other evidence during the searches, including phones and documents related to pandemic unemployment assistance program fraud.

Based in part on the evidence recovered during those searches, a federal grand jury returned a nine-count superseding indictment against Fletcher. That indictment

alleges four counts of wire fraud (Counts I–IV) in violation of 18 U.S.C. § 1343; four counts of aggravated identity theft (Counts V–VIII) in violation of 18 U.S.C. § 1028A(a)(1); and one count of felon in possession of a firearm (Count IX) in violation of 18 U.S.C. § 922(g)(1). ECF No. 45.

Fletcher has since filed two motions to suppress evidence. ECF Nos. 53; 54. His motions raise a great host of challenges, none of which succeed for the reasons discussed below. Accordingly, this Court will deny Fletcher's motions to suppress evidence.

## I. BACKGROUND

As set forth in the relevant warrant affidavits, law enforcement began looking into some "retagged vehicles" (i.e., ones that had their Vehicle Identification Numbers (VINs) and license plates swapped) in June 2019. *See* ECF No. 53-1 at PageID.223–24. The first car that caught officers' attention was a retagged 2017 Dodge Challenger that Pennsylvania Highway Patrol (PHP) officers discovered was stolen from Warren, Michigan. *Id.* The purchaser of that Challenger provided law enforcement with a Michigan title and the seller's identification, both of which were fraudulent. *Id.* at PageID.224. PHP submitted two items from the Challenger for testing, which revealed Terrance Fletcher's DNA. *Id.*

In August 2019, PHP officers investigated a retagged 2019 Dodge Durango discovered to be stolen from Hamtramck, Michigan. *Id.* Again, the victim purchaser

provided law enforcement with a fraudulent Michigan title and the seller's fraudulent identification. *Id.* at PageID.225. The identification matched that of a suspect whom law enforcement identified as an associate of Fletcher's through a picture on Facebook. *Id.*

More than three years later, a car dealership in Rowlett, Texas, reported purchasing six vehicles stolen from Michigan. *Id.* According to the dealership, fraudulent titles and identifications—again from Michigan— were used to sell those cars. *Id.* at PageID.225–29. Two of those cars—a 2019 Dodge Durango and a 2019 Dodge Ram 1500 Big Horn—were connected to Fletcher. *Id.* at PageID.228–30. The Michigan Secretary of State Enforcement Division identified the seller of the Dodge Durango as Fletcher's sister, Lauren Fletcher. *Id.* at PageID.229. In addition, the agents reviewed the subpoenaed bank account into which proceeds of the Dodge Ram 1500 Big Horn were deposited. *Id.* at PageID.230. The account revealed multiple purchases from a jeweler in Richmond Heights, Ohio. *Id.* Agents subpoenaed the jeweler and learned that a customer using the same address that is listed on Fletcher's real driver's license, purchased a diamond chain with the word "Flex." *Id.* The customer also used Fletcher's phone number when communicating with the jeweler. *Id.*

In August 2023, Ohio law enforcement began investigating another car dealership that had sold several stolen cars with fraudulently obtained South

Carolina titles. *Id.* at PageID.230. Law enforcement determined that seven of those cars were purchased from a person known to the business as "Mark Jones" with an Instagram handle "still_that_guy_flex" and a phone number (313) 398-xxxx. *Id.* at PageID.232. Based on that Instagram account, a picture of "Jones's" identification, and the phone number, law enforcement believed that Fletcher was the person behind the Jones alias. *Id.* at PageID.232–34. Law enforcement also reviewed surveillance photos from the South Carolina Department of Motor Vehicles that showed Fletcher engaging in some of the suspected lien washing transactions. *Id.* at PageID.234.

Additionally, law enforcement retrieved evidence of sales to online dealerships, including a sale to Carvana of a 2018 Dodge Durango and a sale to Carvana of a 2020 Ford F-150, both of which used Fletcher's picture and one of which used the "Mark Jones" alias. *Id.* at PageID.237–38.

In February 2024, officers found someone sleeping in a 2023 Range Rover parked in Euclid, Ohio, in the opposite direction of traffic. ECF No. 54 at PageID.367. When asked to provide the car's title, the occupant "produced a fraudulent South Carolina title," in the name of Mark Jones. *Id.* According to the affidavit, law enforcement believed that the occupant was one of "[s]everal … suspects [associated with Fletcher that] often used the aliases of 'Mark Jones.'" *Id.*

After submitting an affidavit outlining these facts in March 2024, FBI agents obtained and executed a search warrant for the iCloud account associated with (313)

398-xxxx, a number they suspected to be associated with Fletcher, *see generally id.* at PageID.358–76. The search of that account revealed "75 pictures of fraudulent titles from Michigan, Arkansas, South Carolina, Ohio, Mississippi, and North Carolina." ECF No. 53-1 at PageID.238–39. It also revealed, among other evidence, pictures of Fletcher "in and around stolen or 'lien washed' vehicles," pictures of VIN plates of stolen cars, and conversations in which Fletcher discussed "obtaining stolen vehicles." *Id.* at PageID.239–40. And, as relevant to the charges in this case, the search produced "several pictures of firearms," text messages of Fletcher selling guns, and evidence related to Fletcher's alleged pandemic unemployment assistance program fraud. *Id.* at PageID.239–40; 242–45; *see also* ECF No. 58 at PageID.409 ("[T]he iCloud contained a screenshot of an excel sheet with over 30 individuals['] PII.").

Using that evidence, agents later sought, obtained, and executed search warrants for two Michigan residences linked to Fletcher, *see generally* ECF Nos. 53-1; 53-2. The affidavits for those residential search warrants were largely identical to the iCloud warrant affidavit with the exception that the latter affidavits also included information obtained from the iCloud account. According to the Government, agents recovered "guns and documents containing PII related to Fletcher's pandemic fraud" from searching the two residences. ECF No. 58 at PageID.403.

## II. LEGAL STANDARDS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause for a search—as opposed to an arrest—means there is a "fair probability" that contraband or evidence will be found in a particular place or on the premises of the proposed search. *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In determining whether probable cause existed for a search warrant, a court must examine only the information contained in the "four corners" of the accompanying affidavit, and it must do so in light of the totality of the circumstances. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004), and *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). The reviewing court must also ensure that the initial judge had a "substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39 (cleaned up). The initial judge's determination of probable cause is entitled to "great deference and should be reversed only if arbitrarily made." *Jackson*, 470 F.3d at 306 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)).

- 6 -

The affidavit supporting the search warrant must also establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). In the context of cellphone data, a nexus between the thing to be searched and the evidence sought is still required. *See United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015). That said, it is an open question in this Circuit exactly which standard applies for a nexus in these cases:

> This court has not decided whether the requisite probable cause nexus for a warrant to search a cell phone is only a fair probability that the phone's data will aid in a particular investigation and disclose evidence of criminal activity or if, instead, the affidavit must make factual allegations that the phone itself is being used in connection with criminal activity.

*United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *3 (6th Cir. Oct. 17, 2024) (citation modified) (collecting cases), *cert. denied,* 145 S. Ct. 2721 (2025).

Even if an affidavit lacks probable cause and thus violated the Fourth Amendment, exclusion is not a proper remedy "when law enforcement officers have acted in objective good faith or their transgressions have been minor." *United States v. Leon*, 468 U.S. 897, 908 (1984). Good-faith reliance is an objective standard; the question for the reviewing court is whether a "reasonably well-trained officer [could have relied] on the warrant." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 645 (6th Cir. 2003) (quoting *United States v. Savoca*, 761 F.2d 292, 296 (6th Cir. 1985)).

Under the so-called *Leon* good-faith exception, officers must "have a reasonable knowledge of what the law prohibits." 468 U.S. at 919 n.20.

Ultimately, evidence need only be suppressed when the search warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (citation modified) (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)). Specifically, an affidavit is "bare bones" and must therefore be suppressed if it "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. O'Neill*, 94 F.4th 531, 541 (6th Cir. 2024) (citation modified) (quoting *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc)).

Thus, an affidavit is not "bare bones" just because it fails to establish probable cause. *United States v. White*, 874 F.3d 490, 496–97 (6th Cir. 2017). Rather, "reasonable inferences that are not sufficient to sustain probable cause may suffice to save the ensuing search as objectively reasonable." *O'Neill*, 94 F.4th at 542 (citation modified) (quoting *White*, 874 F.3d at 500). Finally, the good-faith exception may apply in cases where "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched, even if the information provided was not enough to establish probable cause." *Frazier*, 423 F.3d at 536 (citation modified) (quoting *Carpenter*, 360 F.3d at 596).

- 8 -

### III. DISCUSSION

Fletcher has filed two suppression motions. The first motion challenges the search of his iCloud account. ECF No. 54. Specifically, it argues that (1) the warrant was overbroad; (2) the warrant was stale; (3) the warrant lacked a sufficient nexus between the place to be searched and the things to be seized; and (4) agents exceeded the scope of the warrant. *Id.* Relatedly, the second motion challenges the searches of the two Michigan residences, one on Bert Lane in Inkster, Michigan and one on Beland Street in Detroit, Michigan. ECF No. 53. Like the first, it also argues that (1) the warrants lacked a sufficient nexus between the place to be searched and the things to be seized; (2) the warrant affidavits lacked probable cause to search for guns and fraud; and (3) the warrant affidavits included a material falsity. *Id.* It also adds that information used to obtain the second warrant included evidence tainted by the first unlawful search. *Id.* at PageID.212–13. Both motions make requests for a *Franks* hearing on allegedly untruthful statements made in the supporting warrant affidavits. *Id.* at PageID.216–17; ECF No. 54 at PageID.354–55.

### A. The iCloud Warrant

#### 1. Probable Cause and Nexus

"In order to conclude that an affidavit establishes probable cause, the issuing judge must find that 'given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular

place.'" *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238). "Put another way, the probable-cause standard is satisfied 'where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019) (citations omitted).

Fletcher makes two arguments regarding probable cause: one general and one slightly more specific. First, Fletcher generally asserts that the warrant for his iCloud account should not have issued because the supporting affidavit did not establish probable cause by failing to provide specific, articulable facts beyond mere speculation. ECF No. 54 at PageID.352. The Government aptly describes this argument as perfunctory, as the argument is limited to a paragraph (in both the motion and Fletcher's reply brief) and reads in conclusory terms. ECF No. 58 at PageID.414. Second, Fletcher argues that probable cause was missing because the warrant affidavit did not establish a sufficient nexus. ECF No. 54 at PageID.350. Specifically, Fletcher asserts that the only information tying Fletcher's iCloud account to the suspected lien washing was the affiant's mere speculation that the iCloud could contain evidence of that offense. *Id.* Neither of Fletcher's challenges carry much water.

- 10 -

This Court first addresses Fletcher's specific nexus argument before turning to his broader probable cause argument. To start, Fletcher rightly complains that the affiant could have—and arguably should have—done more to link the iCloud account to the suspected criminal activity. But the affiant, FBI Special Agent Paul Cruz, averred that his training and experience led him to believe the account would contain specific evidence for specific reasons. *See* ECF No. 54 at PageID.368–69 (noting the need for perpetrators of lien-washing schemes to create logs, store pictures of VINs and license plates, and disburse and track funds, all of which would likely be present in the iCloud account). The affiant also tied Fletcher to the account's associated phone number. *Id.* at PageID.359, 365–66. The only missing piece is how the officers knew Fletcher had an iPhone or iCloud account in the first place. Put differently, the affiant tied a phone number to Fletcher and tied that number to criminal conduct, but the affiant fell short of tying the number to an iCloud account in particular. On the face of the affidavit, the reviewing judge would not have known whether Fletcher's phone was linked to an iCloud account, an Android account, or some other system. But some sort of storage system must have existed for the phone, and the affidavit established probable cause that whatever storage system was used by the phone contained evidence of criminal conduct. Thus, that missing piece—exactly what sort of storage system, be it Apple's, Android's, or another competitor's, was linked to the phone—is not material.

The supporting affidavit established the relevant nexus. And, even if it fell just shy of doing so, that shortcoming was not the result of police misconduct but rather a negligent oversight in not specifying the type of phone (and therefore type of storage system) that was being used. *See Leon*, 468 U.S. at 905. Therefore, this Court concludes that the affidavit met the nexus requirement, and any error does not amount to the kind of conduct that the exclusionary rule was designed to guard against, at least not in the eyes of the Supreme Court and the Sixth Circuit.[1]

As for Fletcher's broader probable cause challenge, the iCloud warrant affidavit clearly established probable cause to search Fletcher's iCloud account because Special Agent Cruz provided detailed information on the lien washing investigation that started with a stolen 2017 Dodge Challenger that had Fletcher's DNA inside it. ECF No. 54 at PageID.360. The affidavit also detailed how two victim car dealerships purchased several other cars linked to Fletcher. *See* ECF No. 54 at PageID.361–66. This, together with the information discussed above, was more than

---

[1] Generally, the purpose of the exclusionary rule is to deter police misconduct. *See United States v. Buford*, 632 F.3d 264, 277 (6th Cir. 2011) ("[T]he purpose of the exclusionary rule … is 'to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.'" (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009))). "Moreover, to the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against the 'substantial social costs exacted by the exclusionary rule.'" *Illinois v. Krull*, 480 U.S. 340, 352–53 (1987) (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984)).

enough to establish probable cause that evidence of this criminal conduct would be found on the device Fletcher used to accomplish those sales.

### 2. Staleness

Next, Fletcher argues that—even if the iCloud warrant was, at one point, supported by probable cause—the information justifying a search had become stale by the time agents executed the warrant. ECF No. 54 at PageID.350–52. As grounds for this argument, Fletcher asserts that "[n]early all of the proffered events in the affidavit took place over a year before this time." *Id.* at PageID.351. Fletcher's argument is factually and legally unavailing.

Officers cannot rely on stale warrants because "[t]he probable cause required for a search warrant is concerned with facts relating to a presently existing condition." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (citation modified). In *Abboud*, the Sixth Circuit outlined factors to consider when determining if a warrant is stale:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?)
> (2) the criminal (nomadic or entrenched?)
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Id.* at 572–73 (citation modified).

As a threshold matter, Fletcher is wrong about how far back the underlying events occurred before the warrant's execution. To be sure, the first stolen vehicle was recovered in 2019. ECF No. 54 at PageID.360. But that ultimately revealed six more stolen vehicles in late 2022 and another fourteen in 2023. *Id.* at PageID.361–67. It was not until those fourteen cars were discovered in 2023 that officers were able to tie them to "Mark Jones." *Id*. And officers did not physically find someone using "Mark Jones's" identification until the sleeping driver incident in February 2024, *id*. at PageID.367, one month before they sought, obtained, and executed the warrant. Thus, one month prior to searching the iCloud account of the phone number linked to "Mark Jones," officers had good reason to suspect that the scheme was ongoing.

This one-month gap is far shorter than other windows that the Sixth Circuit has held did not result in stale information. For instance, the Sixth Circuit okayed a warrant to search a residence and computer that was sought five months after officers observed a suspect Internet Protocol (IP) address distributing child sexual abuse material using a peer-to-peer internet file-sharing network. *United States v. Gillman*, 432 F. App'x 513 (6th Cir. 2011). The one-month gap also does not raise concerns in light of the multi-factor test outlined in *Abboud*, because the factors tilt against Fletcher on balance: (1) the suspected lien washing scheme involved a "regenerating conspiracy" over the course of years; (2) since the scheme occurred across multiple

states, the "criminal" may have been "nomadic"; (3) the data stored on Fletcher's phone had at least somewhat of an "enduring utility to its holder"; and (4) the "place to be searched" was more of a "secure operational base" than a "mere criminal forum of convenience" as the number associated with the account was used across multiple transactions. *See* 438 F.3d at 572 (setting out factors). Therefore, the warrant was not stale.

### 3. Overbreadth

Fletcher also challenges the iCloud warrant on the basis that it was overbroad, in violation of the Fourth Amendment's particularity requirement. ECF No. 54 at PageID.348–49. Specifically, he asserts that the information to be searched included "everything and the kitchen sink" and was not restricted by "time limitations." *Id.*

Although generally worded, the iCloud warrant was sufficiently limited to survive review. The Sixth Circuit has "upheld numerous seizures of the majority of a person or business's records based on 'generally worded warrant[s].'" *United States v. Chaney*, 921 F.3d 572, 587 (6th Cir. 2019) (quoting *United States v. Gardiner*, 463 F.3d 445, 471 (6th Cir. 2006)). In *United States v. Gardiner*, for example, the Sixth Circuit upheld a generally worded warrant that "specifically stated the records to be seized included: financial documents; ... business records; ... travel records; investment records; telephone records; records related to payment of personal and business expenses and cash purchases; ... [and] records and notes of

- 15 -

financial transactions." 463 F.3d at 471. Like the warrant in *Gardiner*, the iCloud warrant described with particularity the time-limited documents to be provided by Apple in Attachment B. *See* ECF No. 54 at PageID.380–84. That attachment sought "records regarding the identification of the account"; the contents of all emails and instant messages from June 1, 2019, to present (i.e., March 13, 2024); all files and records saved in the account; location information stored in the account; and "[a]ll activity, connection, and transactional logs for the account." *Id*. at PageID.380–82. And the warrant limited the information to be seized by the Government to "contraband, fruits, evidence, and/or instrumentalities of violations of Ohio … grand theft auto … [and Ohio] identity fraud," since April 1, 2022. *Id*. at PageID.383. Therefore, the iCloud warrant was sufficiently limited.

### *4. Scope*

Moving beyond Fletcher's challenges to the warrant's drafting, Fletcher also takes issue with how the Government executed the search warrant. Specifically, he asserts that agents exceeded the warrant's scope when searching the account. ECF No. 54 at PageID.345–48. That scope, he contends, "limited agents to search for violations of Ohio law concerning the auto theft investigation." *Id*. at PageID.347. And, according to Fletcher, the agents exceeded that scope by searching for and seizing evidence of pandemic unemployment assistance fraud and gun offenses. *Id*.

at 347–48. As evidence of this, Fletcher points to the fact that "the agents must have spent considerable time" recovering such evidence. *Id*. at PageID.347.

The Government responds with three arguments. One, the warrant affidavit alleged federal offenses and established probable cause as to those federal offenses, so the warrant's language regarding Ohio law should be treated as a scrivener's error. ECF No. 58 at PageID.422–23 (citing *United States v. Abdalla*, 972 F.3d 838, 845 (6th Cir. 2020)). Two, even if the warrant did limit law enforcement to searching for evidence of Ohio offenses, the agents were permitted to search for and seize evidence "reasonably related to the offense which formed the basis of the search warrant." *Id*. at PageID.424–25 (quoting *United States v. Castro*, 881 F.3d 961, 967 (6th Cir. 2018) (holding that it was proper for agents to rely on a state search warrant to search a phone for evidence of multi-state robberies even where the warrant only authorized a search for evidence of a robbery in Texas)). Three, the plain view exception allowed the agents to seize evidence not described in the warrant. *Id.* at PageID.426–427.

Although the first argument lacks merit, the second and third arguments are meritorious. The first argument fails because the difference in drafting between a warrant that enumerates federal offenses related to lien washing on the one hand and Ohio state law offenses on the other, cannot reasonably be attributed to a typographical or clerical error. But the second argument succeeds because this case

- 17 -

is indeed analogous to the search for evidence of multi-state robberies in *Castro*. Here, like in *Castro*, the evidence of a multi-state lien-washing scheme that the agents were looking for was reasonably related to evidence of Ohio vehicle theft and identify fraud that the warrant expressly permitted them to pursue. And the third argument succeeds because the agents appear to have met each of the plain view exception's three requirements.[2] Thus, this Court concludes that the agents did not exceed the warrant's scope when executing the iCloud warrant.

## 5. Franks *Hearing*

Finally, Fletcher asserts he is entitled to a *Franks* hearing regarding the iCloud warrant affidavit because it was premised upon a knowingly and intentionally false statement made by Special Agent Cruz. Specifically, he asserts that Special Agent Cruz falsely averred that Lauren Fletcher, Terrance's sister, fraudulently sold a stolen 2019 Dodge Durango (as described in ¶ 14 of the affidavit). ECF No. 54 at PageID.354–55. As support for the assertion that this was a false statement, Fletcher provides a copy of the Durango's title history and an affidavit from Lauren to

---

[2] These requirements are outlined in *United States v. Whiteside*, 141 F.4th 734, 747 (6th Cir. 2025). As discussed above, the agents were acting pursuant to a validly issued search warrant, so the first requirement (discovery from a lawful vantage point) and third requirement (lawful right of access) were met. The second requirement (immediately apparent incriminating nature of seized item) was also met because officers knew Fletcher was a convicted felon and the account had photos of guns, PII, and presumably other information obviously connected to fraud. To date, Fletcher has not offered a plausible, innocuous explanation as to why he would have that information for any other reason than fraud. Therefore, plain view applies.

establish that she lawfully purchased the Durango. ECF No. 54 at PageID.393–94. In response, the Government argues (1) that the allegedly false information was not material to the probable cause finding and (2) that Special Agent Cruz did not knowingly or intentionally make such a false statement. ECF No. 58 at PageID.434–37.

"To demonstrate entitlement to [a *Franks*] hearing, a defendant must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the trust, was included by the affiant in the warrant affidavit.'" *Crawford*, 943 F.3d at 309 (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 156)).

Fletcher has not made either of the required showings here. First, Fletcher has not even alleged—let alone shown—that Special Agent Cruz knowingly and intentionally misrepresented that information in his affidavit. ECF No. 58 at PageID.434. He has not, for example, made a showing that Cruz submitted his affidavit while "subjectively 'entertain[ing] serious doubts as to the truth of his or her allegations.'" *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)). Instead, it appears that the agent was merely relaying information he had received during his investigation from the dealership and the Michigan Secretary of State's Enforcement

- 19 -

Division. Second, the allegedly false statement is not necessary to a finding of probable cause. Indeed, even if this Court were to omit the information about the 2019 Dodge Durango from the iCloud warrant affidavit, there is still information on another 20 cars (including five others from that dealership alone) and information suggesting that the seller, "Mark Jones," was either Terrance Fletcher or his co-conspirators. In his motion, Fletcher argues that the Durango was the only such car tied to Fletcher, but that is simply incorrect as outlined above. Thus, Fletcher has not established that he is entitled to a *Franks* hearing on the iCloud warrant.

### B. The Residence Warrants

#### 1. Probable Cause: Fruit of the Poisonous Tree & Nexus

In his second suppression motion, Fletcher raises two challenges to the residential warrants. First, he argues that the supporting affidavit relied on information tainted by the invalid iCloud warrant without which the warrant would lack probable cause. ECF No. 53 at PageID.212–13. Second, he argues that the warrant did not sufficiently establish the required nexus for probable cause. *Id.* at PageID.213–15.

Fletcher's first argument is a nonstarter because, as discussed above, the iCloud warrant was validly issued. Fletcher's second argument is also unavailing because the warrant did establish a nexus between the suspected criminal activity and the two residences. To be sure, Fletcher is correct that the messages revealing

Fletcher's sale of an "automatic shotgun" from one of the residences, *see* ECF No. 53-1 at PageID.244–45, were relatively old (November 2022) at the time of the warrant application (June 2024). But the affidavit included plenty of other information indicating that Fletcher was continuing to use those two residences for alleged lien washing and unemployment fraud until as recently as four days before the warrant issued. *See, e.g.*, ECF No. 53-1 at PageID.249 (describing Fletcher's cars seen at the target residences).

### 2. Franks *Hearing*

Fletcher makes two arguments for a *Franks* hearing. First, he incorporates his argument from his motion regarding the iCloud warrant affidavit's statement on the involvement of Fletcher's sister. That can be rejected for the reasons discussed above. Second, he argues that Special Agent Cruz knowingly and intentionally omitted material information. Specifically, Fletcher alleges Cruz did not disclose (1) that Fletcher is not pictured in any of the photos of the guns and (2) that "every gun picture was [taken or saved] prior to 2023, most over two years older than the warrant request." ECF No. 53 at PageID.217. The Government again responds by arguing that the omitted information—indeed all of paragraph 35—is immaterial. ECF No. 58 at PageID.438–40.

This Court agrees that the omitted information is not material to the probable-cause showing. Thus, Fletcher has not made the requisite showings for a *Franks* hearing. The Sixth Circuit has articulated the relevant standard here as follows:

> In the case of alleged material omissions—by analogy to the standard for *included* false statements—the defendant is entitled to a hearing if and only if: (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it.

*United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing *United States v. Atkin*, 107 F.3d 1213, 1216–17 (6th Cir. 1997)). Thus, this Court need not consider whether the affidavit established probable cause *without* paragraph 35—which discusses the pictures of guns—entirely. Instead, this Court must consider whether the affidavit would have done so *with* the added information.

Applying that standard here, the warrant affidavit would have established probable cause even with the omitted information. This is because the supporting affidavit alleged that Fletcher had several photos of several different guns and high-capacity magazines, Fletcher had a felony conviction, and Fletcher engaged in the sale of guns over instant message as detailed in the paragraphs following paragraph 35. *See* ECF No. 53-1 at PageID.240–45. Indeed, the affidavit implies that one of the gun photos was sent by Fletcher when arranging that sale. *Id*. Thus, Fletcher has not made the requisite preliminary showing that Cruz omitted *material* information.

- 22 -

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Fletcher's Motions to Suppress Evidence and Requests for a *Franks* Hearing, ECF Nos. 53; 54, are **DENIED**.

**This is not a final order and does not close the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: October 17, 2025

- 23 -